**Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Plaintiff-Appellee,**

v.

**McKISSICK PRODUCTS COMPANY and American Hoist and Derrick Company, d/b/a McKissick Products Division, Defendants-Appellants.**

No. 82–1255.

United States Court of Appeals, Tenth Circuit.

Oct. 19, 1983.

Richard L. Barnes of Nichols & Wolfe, Inc., Tulsa, Okl., for defendants-appellants.

Patricia Saik, Atty., Washington, D.C. (T. Timothy Ryan, Jr., Sol. of Labor, Beate Bloch, Associate Sol., Joseph M. Woodward, Atty., Washington, D.C., and James E. White, Regional Sol., Dallas, Tex., with her on brief), for plaintiff-appellee.

Before SETH, Chief Judge, McWILLIAMS, Circuit Judge, and KERR,* District Judge.

McWILLIAMS, Circuit Judge.

The Secretary of Labor brought this action under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.,* to enjoin McKissick Products Division and its parent corporation, American Hoist and Derrick Company, from violating the overtime pay provisions of the Act, 29 U.S.C. § 207, and from continuing to withhold overtime compensation due certain of its employees.

The principal issue initially decided by the district court on cross-motions for summary judgment was whether the two wage plans under which McKissick paid its maintenance employees violated section 7(a) of the Act. 29 U.S.C. § 207(a). During this stage of the proceedings, the district court had before it the two wage plans, answers to numerous interrogatories, and the deposition of Mr. Charles Lucas, vice-president and general manager of McKissick. The district court held that the pay plans under attack did not comply with the Act's overtime provisions.

McKissick had previously stipulated in a pretrial order that the duties of its maintenance employees did not require irregular hours of work, and admitted in the pre-trial order that it did not qualify for the overtime exception set forth in section 7(f) of

---

* Honorable Ewing T. Kerr, United States District Judge for the District of Wyoming, sitting by designation.

352

the Act. 29 U.S.C. § 207(f). Accordingly, the district court held that section 7(f) of the Act was inapplicable. Furthermore, having failed to affirmatively plead other exceptions to the overtime requirement, the district court held that such had been waived by McKissick.

Subsequent to the district court's order granting the Secretary's motion for partial summary judgment on the issue of whether the wage plans violated the overtime provision of the Act, the parties stipulated that certain payroll summaries prepared by an employee of the Department of Labor reflected the actual hours worked by McKissick's maintenance employees and the amounts actually paid to such employees for the hours worked by each. Thereafter, the Secretary moved for summary judgment. The district court granted the Secretary's motion holding, *inter alia,* that McKissick's violation of the overtime provisions of the Act were willful and that accordingly the three-year statute of limitations applied. Further, the district court held that the amount of compensation due McKissick's maintenance employees should be calculated according to the method proposed by the Secretary. This particular order was followed by formal judgment, entered the same date, enjoining McKissick from further violations of the overtime provisions of the Act and from withholding payment of back overtime pay in the amount of $90,218.75. McKissick thereafter filed a motion for a new trial and a motion to vacate judgment, which the district court denied. McKissick now appeals all of the orders above mentioned. We affirm.

McKissick Products Company, a division of American Hoist and Derrick Company, has a plant in Tulsa, Oklahoma, where it manufactures equipment such as lifting tackle, wire line, and chain accessories designed for use with wire rope. During the time period here in issue, i.e., from 1974 to date of judgment, McKissick compensated its maintenance employees according to the terms of individual agreements, each called an "Employee Compensation Contract," entered into with each of its maintenance employees on an individual basis. Although the form of the contract was slightly modified in December, 1976, the employment contracts, both before and after that date, contained the same essential feature, namely, a guaranteed wage which was paid regardless of how many hours were actually worked up to a contractually agreed minimum.

An example of the individual employment contract in effect from 1974 until December, 1976, is attached to this opinion as Appendix No. 1, and will hereinafter be referred to as Contract No. 1. An example of the individual employment contract in effect after December, 1976, is attached to this opinion as Appendix No. 2, and will be referred to as Contract No. 2.

Congress has determined that employers involved in interstate commerce shall pay their employees premium pay for overtime work. Specifically, section 7(a)(1) of the Act provides that such employee must receive compensation for hours worked in excess of 40 hours per week at a rate not less than one and one-half times the regular rate at which he is employed. 29 U.S.C. § 207(a)(1). The purpose behind the overtime pay requirement is two-fold: (1) to spread employment by encouraging employers to avoid overtime work and thereby employ additional workers on a regular basis; and (2) where the employer prefers overtime work, to compensate the employee for the burden of working longer hours. So, the basic issue to be resolved is whether the two pay plans of McKissick for its maintenance employees square with the simple statutory command that an employee who works more than 40 hours per week shall be paid for such additional hours at a rate which is at least one and one-half times his regular rate of pay.

■ Contract No. 1, Appendix No. 1, provides that the regular rate of pay is $3.94 per hour for the first 50 hours each week, and all hours worked in excess of 50 hours each week shall be paid at a rate of not less than one and one-half times the regular rate of pay. That contract further provides that an employee is guaranteed a monthly

wage of not less than $850 per month for regular time and such overtime, if any, as the necessities of business demand, regardless of the number of hours actually worked. Charles Lucas, the vice-president and general manager of McKissick, in his deposition stated that $3.94 was not really the regular rate of pay. He testified that under the monthly guarantee, the regular rate of pay was not reflected in the contract. He also stated that some employees expressed concern about the overtime provisions of Contract No. 1. Without belaboring the matter, it is apparent that Contract No. 1 does not comply with the statutory mandate that an employee be paid at least time and one-half the regular rate of pay for all hours worked in excess of 40 hours per week.

Contract No. 2, Appendix No. 2, provides that the regular rate of pay is $6.34 per hour, and that all hours worked in excess of 40 hours per week shall be paid at a rate of not less than one and one-half times the regular rate. However, that contract goes on to provide that employees shall have a guaranteed minimum work week of 44 hours per week. In this regard, Charles Lucas testified in his deposition that the practical effect of this minimum work week provision was that an employee who actually worked less than forty-four hours in a given week would nonetheless be paid a guaranteed minimum wage. The guarantee in Contract No. 2 was for forty-four hours of *pay,* and not for forty-four hours of *work.* McKissick paid its maintenance employees a fixed predetermined amount for varying hours of work from week to week which had the practical effect of allowing the employer to pay the same compensation regardless of the number of hours actually worked, up to the guarantee.

Section 7(f) of the Act relates to weekly guarantees of pay, and provides as follows:

(f) No employer shall be deemed to have violated subsection (a) by employing any employee for a workweek in excess of the maximum workweek applicable to such employee under subsection (a) if such employee is employed pursuant to a bona fide individual contract, or pursuant to an agreement made as a result of collective bargaining by representatives of employees, if the duties of such employee necessitate irregular hours of work, and the contract or agreement (1) specifies a regular rate of pay of not less than the minimum hourly rate provided in subsection (a) or (b) of section 6 (whichever may be applicable) and compensation at not less than one and one-half times such rate for all hours worked in excess of such maximum workweek, and (2) provides a weekly guaranty of pay for not more than 60 hours based on the rates so specified.

29 CFR § 778.403 implements Section 7(f) of the Act, and provides as follows:

§ 778.403. Constant pay for varying workweeks including overtime is not permitted except as specified in Section 7(f).

Section 7(f) is the only provision of the Act which allows an employer to pay the same total compensation each week to an employee who works overtime and whose hours of work vary from week to week. (See in this connection the discussion in §§ 778.207, 778.321–778.329, and 778.308–778.315.) Unless the pay arrangements in a particular situation meet the requirements of Section 7(f) as set forth, all compensation received by the employee under a guaranteed pay plan is included in his regular rate and no part of such guaranteed pay may be credited toward overtime compensation due under the Act. Section 7(f) is an exemption from the overtime provisions of the Act. No employer will be exempt from the duty of computing overtime compensation for an employee under Section 7(a) unless the employee is paid pursuant to a plan which actually meets all the requirements of the exemption. These requirements will be discussed separately in the ensuing sections.

■ Applying Section 7(f) and the implementing regulation set forth, the McKissick's wage plan contained in Contract No. 2 does not comply with the overtime provisions of section (7)(a) of the Act, and does

not qualify for any exception, including the exception provided for by section 7(f) of the Act. *Donovan v. Brown Equipment and Service Tools, Inc.,* 666 F.2d 148 (5th Cir. 1982); *Marshall v. Hamburg Shirt Corp.,* 577 F.2d 444 (8th Cir.1978).

McKissick claims that its pay plans, or at least the plan embodied in Contract No. 2, comes within the ambit of *Walling v. A.H. Belo Corp.,* 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed.2d 1716 (1942). We disagree. The rule of *Belo* is codified in 29 U.S.C. § 207(f). As previously discussed, Section 7(f) applies to an employer who is engaged in a business with unpredictable weekly hours of work. However, McKissick, by pretrial order, stipulated that its business was not of that nature, and the provisions of 29 U.S.C. § 207(f) did not apply to it. In this regard, it was conceded that the hours of McKissick's maintenance employees generally fluctuated only in the overtime range, and that no employee worked less than 40 hours per week unless he did so for personal reasons.

On appeal, McKissick argues that it is entitled to a credit under 29 U.S.C. § 207(e)(7). So far as we can tell, this particular matter was never urged in the district court, and, accordingly, was not considered by that court. It cannot now be urged here for the first time. In any event, it would appear that section 207 (e)(7) has no applicability to the instant case.

■ McKissick also argues that the district court's holding that its violations were "willful" is in error. We disagree. To establish a "willful" violation of the act, it is not necessary to show that the employer actually "knew" he was violating the act. It is sufficient to show that the employer knew that the Act was "in the picture" and was aware of the Act's possible application to his employees. *Mistretta v. Sandia Corp.,* 639 F.2d 588 (10th Cir.1980), and *Coleman v. Jiffy June Farms, Inc.,* 458 F.2d 1139 (5th Cir.1971), *cert. denied,* 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219 (1972). Lucas's depositional testimony indicates that McKissick knew the Act was "in the picture."

Accordingly, the judgment of the district court is affirmed.

## APPENDIX NO. 1

### Employee Compensation Contract

Your position as _____Maintenance Man_____ requires you to be available for work at irregular hours each week. Also, on occasion, you are required to work overtime beyond 40 hours per week.

Therefore, on this, the __23__ day of __February__, 1976, a contract was entered into between __Joe Burcham__ hereafter called "Employee," and __McKissick Products Company__ hereafter called "Employer," for the purposes of setting forth the agreed method of compensating the Employee for services performed by the Employer.

It is mutually agreed that the compensation of the Employee shall be calculated as follows:

1. The regular rate of pay shall be $__3.94__ per hour for the first __50__ hours each week;

2. All hours worked in excess of the first __50__ hours each week shall be paid at a rate not less than one and one-half times the regular rate of pay mentioned above;

3. The Employee is guaranteed that he/she will receive for regular time and for such overtime as the necessities of business demand, a sum not less than $__850.00__ per month.

4. This contract shall become null and void upon acceptance of a new wage rate, upon the termination of your employment, upon your accepting another position with the Company, or upon your becoming incapacitated

to perform the required work, whichever occurs earlier. Nothing contained herein constitutes a guarantee of continued employment but merely specifies the legal salary arrangement between you and the Employer.

/s/   Joe Burcham                               [Signature]_____
(Employee's Signature)                          (Employer's Representative)

## APPENDIX NO.  2

### EMPLOYEE COMPENSATION CONTRACT

On this, the  1st  day of __December_____, 1976, a contract was entered into between __Don Abbott_____ hereafter called "Employee," and McKissick Products Company hereafter called "Employer," for the purpose of setting forth the agreed method of compensating the Employee for services performed by the Employee.

It is mutually agreed that the compensation of the Employee shall be calculated as follows:

1. The regular rate of pay shall be $___6.34___ per hour.

2. All hours worked in excess of the first __40__ hours each week shall be paid at a rate not less than one and one-half times the regular rate of pay mentioned above;

3. The Employee will have a minimum work week of __44__ hours each work week.

4. This contract shall become null and void upon acceptance of a new wage rate, upon the termination of your employment, upon your accepting another position with the Company, or upon your becoming incapacitated to perform the required work, whichever occurs earlier. Nothing contained herein constitutes a guarantee of continued employment but merely specifies the legal salary arrangement between you and the Employer.

/s/   Don Abbott_____              [Signature]_____12–1–76___
(Employee's Signature)        Date          (Employer's Representative)    Date