**Bruce POOLAW, Plaintiff-Appellant, Cross-Appellee,**

v.

**CITY OF ANADARKO, OKLAHOMA; the Mayor of Anadarko, Clark McCaskel; the City Manager, Royce Hunter; the Former Acting Chief of Police, J.C. Givens; the Former Acting City Managers, Bob Wilkerson and Ron Madison, Defendants-Appellees, Cross-Appellants.**

**Nos. 82–1760, 82–1854.**

United States Court of Appeals, Tenth Circuit.

June 27, 1984.

---

Grover Miskovsky, Oklahoma City, Okl. (John Constantikes, Oklahoma City, Okl., with him on the brief), for plaintiff-appellant, cross-appellee.

Margaret McMorrow-Love, Oklahoma City, Okl. (Terry W. Tippens and Doneen Douglas Jones, Oklahoma City, Okl., with her on the brief), of Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, Okl., for defendants-appellees, cross-appellants.

Before McWILLIAMS and LOGAN, Circuit Judges, and CAMPOS, District Judge.*

McWILLIAMS, Circuit Judge.

Bruce Poolaw, an American Indian, was fired from his job as an Anadarko, Oklahoma, policeman. The Policeman Board of Review determined that there was insufficient evidence to justify the termination, but the city manager refused to reinstate him. Poolaw then brought suit against the City of Anadarko, its city manager and four other city officials, alleging that he had been discriminated against during the course of his employment, and was

---

* Honorable Santiago E. Campos, United States District Judge of the District of New Mexico, sitting by designation.

ultimately fired, on account of his race. Poolaw's claims were filed pursuant to 42 U.S.C. §§ 1981, 1983 and 2000e–2000e–17 (Title VII) (1976 & Supp. V 1981).[1] On motion, the district court initially dismissed all three actions. On appeal, we reversed and remanded. *Poolaw v. City of Anadarko*, 660 F.2d 459 (10th Cir.1981).

After remand, the case came on for trial. Because "there is no right to trial by jury in cases arising under Title VII[,]" *Lehman v. Nakshian*, 453 U.S. 156, 164, 101 S.Ct. 2698, 2703, 69 L.Ed.2d 548 (1981), the § 1981 and § 1983 claims were tried to a jury and the Title VII claim was heard by the presiding judge. The jury awarded Poolaw $10,000 actual damages and $40,-000 punitive damages against the City of Anadarko on his § 1981 claim. It also awarded nominal damages against the city and two officials and $1000 punitive damages against the city manager on Poolaw's § 1983 claim.

The district court, acting pursuant to post-trial motions, set aside the jury's award of punitive damages against the city, but declined to set aside any of the other awards. At the same time, the district court, sitting as the trier of the fact, dismissed Poolaw's Title VII claim. The court also held a hearing on the issue of attorney's fees and awarded $20,000 to Poolaw's lawyers. Poolaw and the City of Anardarko both appeal. We affirm.

Poolaw, in his appeal, No. 82–1760, complains as follows: (1) the district court erred in denying him relief under Title VII; (2) the district court erred in striking the jury's award of $40,000 in punitive damages on his § 1981 claim; and (3) the dis-trict court's award of $20,000 as attorney's fees was inadequate.

The City of Anadarko in its cross-appeal, No. 82–1854, complains that the district court erred in refusing to grant its motion for judgment notwithstanding the verdict as concerns the $10,000 in actual damages awarded to Poolaw on his § 1981 claim.

## I.  *Punitive Damages Under § 1981*

Perhaps the central issue in these appeals is whether a municipality such as the City of Anadarko is immune from punitive damages in connection with a claim based on § 1981. The district court held that it is immune, and we find no error. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) held that a municipality is immune from punitive damages in a claim brought under § 1983. The question here is whether the same rule should apply in a § 1981 action. The First Circuit, in *Heritage Homes of Attleboro, Inc. v. Seekonk Water District*, 670 F.2d 1 (1st Cir.), *cert. denied*, 457 U.S. 1120, 102 S.Ct. 2934, 73 L.Ed.2d 1333 (1982), has held that both history and policy support municipal immunity from punitive damages under § 1981. We are in accord with the result reached in *Heritage Homes*.

Poolaw has failed to persuade us, by reference to the legislative history or otherwise, that Congress intended to override the immunity from punitive damages that municipalities traditionally have enjoyed. *City of Newport*, 453 U.S. at 259–64, 101 S.Ct. at 2755–58; *Heritage Homes*, 670 F.2d at 3. Therefore, there remains a presumption of municipal immunity here. *See*

---

1. 42 U.S.C. § 1983 has its origin in the Civil Rights Act of 1871. It provides a remedy against any "person", including a municipality, who, under color of state law, violates the constitutional rights of another. *See generally Monell v. Dep't of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). 42 U.S.C. § 1981 was enacted five years earlier pursuant to the Civil Rights Act of 1866 and reenacted, after passage of the Fourteenth Amendment, in the Civil Rights Act of 1870. It was designed "to prohibit all racial discrimination, whether or not under color of law, with respect to the rights enumerated therein...." *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 436, 88 S.Ct. 2186, 2201, 20 L.Ed.2d 1189 (1968). 42 U.S.C. § 2000e–2000e–17 is the codification of Title VII of the Civil Rights Act of 1964. Its purpose is "to assure equality of employment opportunities by eliminating those practices and devices that discriminate on the basis of race, color, religion, sex or national origin." *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44, 94 S.Ct. 1011, 1017, 39 L.Ed.2d 147 (1974). *See generally* C. Antieau, *Federal Civil Rights Acts* (2d ed. 1980).

*Pierson v. Ray,* 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967). Moreover, we believe that the policy arguments in favor of municipal immunity to punitive damages are valid as applied to both § 1983 and § 1981.

■ First, punitive damages are intended to punish wrongdoers rather than compensate victims. The wrongdoers in a § 1981 claim are the individuals who discriminated against the plaintiff on racial grounds. These *individuals* are the guilty parties who, under certain circumstances, deserve punishment. Awarding punitive damages against a municipality, on the other hand, " 'punishes' only the taxpayers, who took no part in the commission of the tort.... Neither reason nor justice suggests that such retribution should be visited upon the shoulders of blameless or unknowing taxpayers." *City of Newport,* 453 U.S. at 267, 101 S.Ct. at 2759.

■ Second, punitive damages are also intended to stop *future* wrongdoing. To be effective, the deterrent must focus on the municipal officials who have engaged in the prohibited discrimination. These officials probably will not be deterred simply by assessing punitive damages against their employer, the municipality.

Third, we agree with the First Circuit that the Supreme "Court's concern with not imposing huge financial burdens on municipalities is equally applicable to § 1981." *Heritage Homes,* 670 F.2d at 3. Juries, aware of the taxing power of municipalities, are apt to make "extremely large awards[,] which would not only strain local treasuries but might also curtail [municipal] services." *Id.*

For these reasons, we hold that municipalities cannot be held liable for punitive damages in § 1981 actions, and that the

district court ruled correctly in disallowing Poolaw's award.[2]

## II. *The Title VII Claim*

■ We now consider Poolaw's appeal on the dismissal of his Title VII claim. At the conclusion of Poolaw's case, the City moved for a judgment of acquittal. The district court denied the motion and thereby indicated that Poolaw had made a *prima facie* showing of disparate treatment based on race. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The burden then shifted to the defendants, who tried to articulate "legitimate, non-discriminatory" reasons for Poolaw's discharge. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981) (footnote omitted). The City argues that it fired Poolaw because he lied on his employment application concerning a prior arrest and was unfit to be a police officer due to complaints received by the police department about other alleged misdeeds involving bogus checks and the failure to pay his debts.

Once the City of Anadarko and the individual defendants offered evidence tending to show valid reasons for Poolaw's firing, "the *McDonnell-Burdine* presumption actually dropped from the case, and the court was in a position to decide the ultimate factual issue, as the trial judge did here." *Whatley v. Skaggs Companies, Inc.,* 707 F.2d 1129, 1135–36 (10th Cir.), *cert. denied,* — U.S. ——, 104 S.Ct. 528, 78 L.Ed.2d 314 (1983) (citing *United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983)). Based on the entire record, the district court found that Poolaw had failed to establish the City of Anadarko's liability under Title VII.[3]

**2.** Several other district courts have also reached this conclusion. See *Holly v. City of Naperville,* 571 F.Supp. 668 (N.D.Ill.1983); *Bell v. City of Milwaukee,* 536 F.Supp. 462 (E.D.Wis.1982); *Ferguson v. Jolet Mass Transit Dist.,* 526 F.Supp. 222 (N.D.Ill.1981).

**3.** We do not believe, as Poolaw contends, that the district judge improperly based his ruling on a remark made outside of the record by one of the jurors. We find it untenable to suppose that the trial judge would disregard four days of testimony and other evidence, admitted through

True, testimony and the permissible inferences were conflicting, but the Supreme Court has recognized "that the question facing triers of fact in discrimination cases is both sensitive and difficult.... There will seldom be 'eyewitness' testimony as to the employer's mental processes. But none of this means that trial courts or reviewing courts should treat discrimination differently from other ultimate questions of fact." *Aikens,* 103 S.Ct. at 1482. Therefore, because the trial court's resolution of the matter was not clearly erroneous, we are not at liberty to disturb it. Fed.R.Civ.P. 52(a). *See Curry v. Oklahoma Gas & Electric Co.,* 730 F.2d 598, 602 (10th Cir.1984) ("clearly erroneous" standard applies to ultimate findings of fact in Title VII actions).

### III. *The City's Cross-Appeal*

The City of Anadarko's cross-appeal challenges Poolaw's award of $10,000 in actual damages under § 1981. The City of Anadarko argues that there is no evidence of race discrimination to support the jury's award. Further, the City argues that the fact that the district court, sitting as the trier of fact on Poolaw's Title VII claim, found for the defendants *precludes* any award on Poolaw's § 1981 claim.

As to the first contention, we believe the jury's award is supported by the record, although, as indicated, the evidence of race discrimination was in conflict. As to the second contention, the fact that the district judge found for the defendants on Poolaw's Title VII claim does not require that the jury's § 1981 actual damages award be set aside. Title VII and § 1981 cover similar ground, but they are not mutually exclusive. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 459, 95 S.Ct. 1716, 1719, 44 L.Ed.2d 295 (1975) (citation omitted). Moreover, although the

district judge and the jury heard the same evidence in this case, it is not unheard of for separate fact-finders to reach opposite conclusions.[4] Therefore, we uphold Poolaw's award of actual damages under § 1981.

### IV. *Attorney's Fees*

Finally, we find no abuse of discretion in the district court's award of $20,000 in attorney's fees, as authorized by 42 U.S.C. § 1988 (Supp. V 1981). Poolaw sought an allowance in excess of $120,000, and no doubt was disappointed in the allowance made. Be that as it may, we do not believe the award made by the district court was unreasonable in light of the unsatisfactory documentation of certain time spent on the case. *See Ramos v. Lamm,* 713 F.2d 546, 553 (10th Cir.1983). The district court also found that the hourly rate charged was excessive and that the billable hours claimed were exaggerated. Further, Poolaw's success was of a limited nature. Besides the City of Anadarko, there were four other defendants.[5] Poolaw failed to make any recovery against two of them, and he made only nominal recovery in the sum of one dollar against a third. The Supreme Court has held that the degree of success obtained is "a crucial factor" in determining a proper attorney's fee under 42 U.S.C. § 1988. *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 1943, 76 L.Ed.2d 40 (1983). We are not inclined to modify the district court's award of attorney's fees. That court saw "the attorneys' work first hand," and could make the necessary judgments about that work better than we can now. *Higgins v. State ex rel. Oklahoma Employment Security Commission,* 642 F.2d 1199, 1203 (10th Cir. 1981).

Judgment affirmed in all respects.

---

proper channels at trial, in order to be swayed by a juror's extraneous comments.

**4.** At the hearing on defendants' motion for judgment notwithstanding the verdict, the district judge stated that he did not believe that the City of Anadarko had discriminated against Poolaw because of his race. Rather, "the City did not

afford him any due process [in firing him] ... and that's [why] he won the case."

**5.** Poolaw's cause of action against a fifth defendant was dismissed at the beginning of the trial.