**Arthur H. SLENKAMP, Plaintiff,**

**v.**

**BOROUGH OF BRENTWOOD, Defendant.**

Civ. A. No. 84–65.

United States District Court,
W.D. Pennsylvania.

March 11, 1985.

Joseph S. Hornack, Abes & Begler, Pittsburgh, Pa., for plaintiff.

Joseph J. Bosick, Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, Pa., for defendant.

## OPINION

COHILL, District Judge.

The Complaint in this case, filed by Plaintiff against the Borough of Brentwood (the "Borough"), a suburb of Pittsburgh, alleges violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA") in connection with a Borough ordinance setting a mandatory retirement age of 65 for its police officers. Defendant has moved for summary judgment on three different grounds: 1) statute of limitations; 2) failure to timely file with the Equal Employment Opportunity Commission ("EEOC"); and 3) a Bona Fide Occupational Qualification ("BFOQ") defense.

## FACTS

Plaintiff was the Chief of Police of the Borough from 1958 until May 31, 1981, the month he reached the mandatory retirement age of 65. Plaintiff alleges that he was told at a Police Committee meeting of the Borough Council in March 1981 of his required retirement at the end of May. The Committee, in response to Plaintiff's oral request for reconsideration, allegedly reviewed the request, but issued an official denial at an April 21, 1981 public meeting of the Borough Council.

Plaintiff did not file a charge of age discrimination with the Pennsylvania Human Relations Commission. On March 2, 1982, Plaintiff filed a charge with the Equal Employment Opportunity Commission. The Complaint in this case was filed on September 12, 1984.

### Summary Judgment

Rule 56 provides, in part, that summary judgment shall be granted only

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c).

When considering a motion for summary judgment, the court must determine if there are material facts in dispute and must view the facts in the light most favorable to the nonmoving party. *Goclowski v. Penn Central Transp. Co.*, 571 F.2d 747, 751 (3d Cir.1977). The moving party has the burden of establishing that no genuine issue of fact exists. *Butz v. Hertz Corp.*, 554 F.Supp. 1178, 1181 (W.D.Pa.1983).

### A. Statute of Limitations

A suit alleging a nonwillful violation of the ADEA must be brought "within two years after the cause of action has accrued." 29 U.S.C. § 626(e)(1). The statute of limitations for willful claims is three years. *Id.* The ADEA employs the term "willful" in two contexts. One, the statute

of limitations provision, extends the limitations period to three years when a violation is "willful." *See* 29 U.S.C. § 626(e)(1) (incorporating 29 U.S.C. § 255(a) of the Portal-to-Portal Act). The second provides that liquidated damages shall be payable only· in case of "willful" violations. 29 U.S.C. § 626(b). While Congress provided that the rights created by the ADEA were to be enforced in accordance with the powers, remedies and procedures of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219 (1976), it declined to adopt the mandatory liquidated damages portion of section 16(b) of the FLSA. *See TWA v. Thurston,* —— U.S. ——, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985).

Defendant argues that summary judgment is appropriate because the action was filed more than two years after the alleged discriminatory act and because the violation alleged is not "willful" so as to extend the statute of limitations to three years. In so arguing, Defendant urges us to adopt a different standard for "willful" when considering statute of limitations than for liquidated damages issues.

We believe two inquiries are necessary to decide this issue: 1) the appropriate standard for "willfulness" under section 626(e)(1); and 2) whether summary judgment is appropriate under that standard and the facts of this case.

Defendant urges us to consider cases construing the statute of limitations contained in 29 U.S.C. § 255(a) and argues that the appropriate standard is "[whether] the employer knew the [ADEA] was in the picture." *See* Defendant's Brief, at 4 (citing *Coleman v. Jiffy June Farms, Inc.,* 458 F.2d 1139 (5th Cir.1971), *cert. denied,* 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219 (1972)). In support of its motion, Defendant has submitted identical affidavits of two Borough Council members, James Joyce and Earl Swanson. These affidavits stated that it never occurred to either council member that the mandatory retirement age of 65 might violate any laws prohibiting age discrimination, and that it never occurred to the Borough Council that the

ADEA might be implicated as a result of the retirement policy. *See* Defendant's Memorandum, Ex. 2, 3. Defendant argues that summary judgment is appropriate because under Defendant's proposed standard, the Borough had no knowledge that the ADEA was "in the picture." *Id.* at 4.

We have found no cases which discuss the standard for "willfulness" specifically as it relates to § 626(e)(1) of the ADEA. The more hotly-debated issue in ADEA cases in recent years has been the definition of "willfulness" as used in § 7(b) of the Act, providing for liquidated damages. 29 U.S.C. § 626(b). The Supreme Court recently decided this issue, holding that an employer acts "willfully" so as to be subject to liquidated damages under § 7(b), if it "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." *TWA v. Thurston,* —— U.S. at ——, 105 S.Ct. at 624, 83 L.Ed.2d at 536. In so holding, the Court rejected a more expansive "in the picture" standard urged by Respondents in reliance on cases construing § 255(a). *Id.* at ——, 105 S.Ct. at 625, 83 L.Ed.2d at 537. Thus, *Thurston* also overrules the even more expansive standard of the Third Circuit, which held that an employer acts "willfully" for purposes of § 7(b) if the violation was "intentional, knowing or voluntary as distinguished from accidental and it is used to characterize conduct marked by careless disregard whether or not one has the right to act...." *Wehr v. Burroughs,* 619 F.2d 276, 283 (3d Cir.1980). *See also Avtex Fibers, Inc. v. McDowell,* 740 F.2d 214 (3d Cir.1984), *cert. granted, vacated and remanded* for consideration in light of *TWA v. Thurston,* —— U.S. ——, 105 S.Ct. 1159, 84 L.Ed.2d 312 (1985).

The Supreme Court stated, in *Thurston,* that "[e]ven if the 'in the picture' standard were appropriate for the statute of limitations, the same standard should not govern a provision dealing with liquidated damages." —— U.S. at ——, 105 S.Ct. at 625, 83 L.Ed.2d at 537. The Court then noted that the Courts of Appeals are divided over whether Congress intended the willfulness

standard to be identical for determining liquidated damages and for purposes of the limitations period. *Id.* n. 21 (*comparing Spagnuolo v. Whirlpool Corp.*, 641 F.2d 1109, 1113 (4th Cir.), *cert. denied*, 454 U.S. 860, 102 S.Ct. 316, 70 L.Ed.2d 158 (1981) (standards identical) with *Kelly v. American Standard, Inc.*, 640 F.2d 974, 979 (9th Cir.1981) (standards different)).

The position of the Third Circuit is unclear on this point. As the court noted in *Kneisley v. Hercules, Inc.*, 577 F.Supp. 726 (D.Del.1983), "[t]he *Wehr* court stated that its definition of willfulness under the ADEA's liquidated damage provision was identical to the statute of limitations' definition in section 255, and its holding was limited to ADEA's liquidated damages provision." *Id.* at 737. *See also id.* at 738 (speculating as to whether Third Circuit would adopt uniform or different tests with regard to statute of limitations section and liquidated damage section). We do not believe, after *Thurston*, that *Wehr* is controlling on the question we now consider.

We hold, for the following reasons, that the two standards should be uniform and, thus, apply to § 626(e)(1) the standard set forth in *Thurston* for § 7(b) of the ADEA. Second, we hold that the determination of "willfulness" is a matter of fact, and, on the record before us, inappropriate for summary judgment.

### B. *A Uniform Standard for "Willfulness"*

In considering the standard for "willfulness" under § 7(b) of the ADEA, courts have relied, in part, on cases construing the FLSA statute of limitations provision. *See, e.g., Wehr v. Burroughs*, 619 F.2d 276, 282–83 (3d Cir.1980) (citing *Hodgson v. Hyatt*, 318 F.Supp. 390 (N.D.Fla.1970) (defining "willful" for FLSA statute of limitations)). In *Wehr*, the Third Circuit adopted the FLSA statute of limitations definition of "willful" as "knowing and voluntary," and applied it to § 7(b) of the ADEA. *See Wehr*, 619 F.2d at 283. Other courts also looked to the FLSA, but differed as to the definition of "willful." *See, e.g., Spagnuo-*

*lo v. Whirlpool Corp.*, 641 F.2d 1109, 1113–14 (4th Cir.) (instruction governed by experience under FLSA appropriate for ADEA, standard is whether employer knows or has reason to know that conduct is governed by [ADEA]), *cert. denied*, 454 U.S. 860, 102 S.Ct. 316, 70 L.Ed.2d 158 (1981); *EEOC v. Prudential Savings & Loan Ass'n*, 741 F.2d 1225, 1233–34 (10th Cir.1984) (adopting FLSA definition of "willfulness" for § 7(b) of ADEA; standard is whether employer was, or should have been, cognizant of appreciable possibility that employees were covered by statutory provisions); *cert. granted, vacated* and *remanded* in light of *TWA v. Thurston*, —— U.S. ——, 105 S.Ct. 896, 83 L.Ed.2d 913 (1985). *But see Kelly v. American Standard, Inc.*, 640 F.2d 974, 979–80 (9th Cir.1981) (distinguishing FLSA statute of limitations cases which require knowledge of implications under the FLSA and adopting Third Circuit standard of "knowing and voluntary" for § 7(b)). *Cf. TWA v. Thurston*, —— U.S. at ——, 105 S.Ct. at 624, 83 L.Ed.2d at 536 (noting and adopting standard of cases imposing criminal liability for "willful" violation under § 16(a) of FLSA; standard is whether employer wholly disregards the law without making any reasonable effort to determine whether plan would constitute violation of law) (citing *Nabob Oil Co. v. United States*, 190 F.2d 478, 479 (10th Cir.), *cert. denied*, 342 U.S. 876, 72 S.Ct. 167, 96 L.Ed. 658 (1951); *Darby v. United States*, 132 F.2d 928 (5th Cir.1943)).

None of the Courts of Appeals, however, suggested that the two provisions of the ADEA were subject to different definitions of "willful." Inasmuch as *Kelly v. American Standard*, 640 F.2d 974 (9th Cir.1981) suggests such a conclusion, we respectfully reject it.

■ "Willful" is not defined in the ADEA. We believe, however, that its use in the damages and statute of limitations provisions should be read *in pari materia.* To hold otherwise would, we believe, create a practical quagmire in ADEA cases. To accept Defendant's argument that an "in

the picture" standard applies to § 626(e)(1) might require a judge to instruct a jury as to two different meanings of "willful" within the same statute; the possibility also arises that a jury might find a violation to be willful for statute of limitations purposes but not for liquidated damages purposes. The dual standard might thus allow a suit filed more than two years after the alleged act of discrimination to proceed because the employer knew the act was "in the picture" but preclude relief because the violation was not willful under the *Thurston* standard. We doubt that Congress intended such a result. The statute of limitations is extended for "willful" violations, and liquidated damages are awarded for such violations.

Apart from the practical problems raised, we agree with the Supreme Court's observation in *Thurston,* in reference to the "in the picture" standard that, "[a]s employees are required to post ADEA notices, it would be virtually impossible for an employer to show he was unaware of the Act and its potential applicability." *Thurston,* —— U.S. at ——, 105 S.Ct. at 625, 83 L.Ed.2d at 537. *Cf. Blackwell v. Sun Elec. Corp.,* 696 F.2d 1176, 1191 (6th Cir.1983) ("[s]ubjecting the defendant to excess damages permitted only in instances of a specific finding of 'willful' discrimination upon charge that jury should determine if the employer [knew] the Act was *in the picture,* is at best vague and of little real value to the factfinder, and at worst destructive of Congress' specific choice of a legal term of art with certain precise and well-understood consequences." (emphasis in original). For the same reasons, we believe that the "in the picture" standard is too vague a basis on which to extend liability.

 We hold that "willful" as used in § 626(e)(1) and § 626(b) are both subject to the definition set out in *Thurston;* the effect of a finding of "willfulness" will subject the defendant to an additional year of potential liability and liquidated damages. *See generally Donovan v. M & M Wrecker Service, Inc.,* 733 F.2d 83, 84–86

(10th Cir.1984); *Donovan v. Simmons Petroleum Corp.,* 725 F.2d 83, 84 (10th Cir. 1983); *EEOC v. Kansas Medical Center,* 705 F.2d 1270, 1275 (10th Cir.1983) (FLSA cases).

 Second, we do not believe that Defendant's affidavits from the two commissioners are a sufficient basis on which to grant summary judgment. Under the *Thurston* standard a violation may be "willful" if the Borough showed "reckless disregard for the matter of whether its conduct was prohibited by the ADEA." 83 L.Ed.2d at 536. Such a finding, under our holding in this case, would make the suit a timely one.

In this case, Plaintiff stated in his deposition that no signs were posted informing employees of their rights under the ADEA until after May 31, 1981. Plaintiff also stated that he noticed that a sign was posted after that date. Deposition of August Slenkamp, at 57–58. Counsel for Defendant stated at oral argument that the Court could assume, for purposes of this motion, that no sign was posted. Tr. at ——. We believe these facts raise a material issue as to recklessness. *See Crosland v. Charlotte Eye, Ear & Throat Hospital,* 686 F.2d 208, 217 (4th Cir.1982) (question of what constitutes actual or constructive knowledge that conduct is "governed by Act" necessarily open to interpretation depending on circumstances); *Marshall v. American Motors Corp.,* 475 F.Supp. 875, 883 (E.D.Mich.1979) (willfulness is an issue of fact not appropriately decided on motion for summary judgment).

### C. *Equitable Tolling*

A charge of discrimination must be filed with the EEOC 1) within 180 days after the alleged unlawful practice occurred; or 2) in a case to which § 633(b) applies, within 300 days after the alleged unlawful practice occurred. 29 U.S.C. § 626(d). Plaintiff concedes that the 300-day notice period prescribed by § 626(d)(2) does not apply since Mr. Slenkamp did not institute proceedings under state law, nor could he have done so since the Pennsylvania Human Relations

Act, at the time, only protected employees from age discrimination up to and including the age of 62. *See* Amendment to Pennsylvania Human Relations Act, effective Dec. 15, 1982, P.L. 1267, No. 288 § 1, codified at 43 Pa.Stat.Ann. § 954(h) (Purdon 1982) (extending protection limit from age 62 to age 70).

We must then decide 1) when the unlawful employment practice occurred; 2) whether Plaintiff filed his charge within 180 days of the alleged practice; and 3) if not, whether Plaintiff's action should be allowed to proceed under the doctrine of equitable tolling.

■ We hold that the alleged unlawful employment practice occurred at the public meeting of the Borough Council on April 21, 1981, when Plaintiff was informed that he would have to retire at the end of May 1981, the month he turned 65. *See Chardon v. Fernandez*, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1980) (per curiam); *Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1978). *Ricks* and *Chardon* have been held applicable to cases brought under the ADEA. *EEOC v. Home Ins. Co.*, 553 F.Supp. 704, 710 (S.D.N.Y.1982) (citing cases). Since the case was filed with the EEOC on March 2, 1982, it is clearly barred by the 180-day statute of limitations, absent equitable considerations.

■ The 180 and 300-day limitations periods for filing with the EEOC have been held not to be jurisdictional, and thus subject to equitable tolling. *Bonham v. Dresser Indus.*, 569 F.2d 187, 193 (3d Cir.1977). The burden is on the Plaintiff to establish that the statute has been tolled. *Butz v. Hertz*, 554 F.Supp. 1178, 1181 (W.D.Pa. 1983) (citing *Swietlowich v. County of Bucks*, 610 F.2d 1157 (3d Cir.1979)).

Plaintiff argues that the limitations period should be tolled because 1) Plaintiff was assured by several officers and agents of the Borough, including the Borough Solicitor, at the time of the discharge, that the ordinance was legal and non-discriminatory; and 2) from April 21 to May 31, 1981,

the Borough did not have posted, at Plaintiff's place of employment, the ADEA notice required by 29 U.S.C. § 627.

The Court of Appeals for the Third Circuit has stated that equitable tolling may be appropriate where 1) the defendant has actively misled the Plaintiff; 2) the Plaintiff has "in some extraordinary way" been prevented from asserting his rights; or 3) Plaintiff timely asserted his rights in the wrong forum. *See Kocian v. Getty Refining & Marketing Co.*, 707 F.2d 748, 751 (3d Cir.1983) (citing *School Dist. of Allentown v. Marshall*, 657 F.2d 16, 20 (ed Cir.1981)), *cert. denied*, — U.S. —, 104 S.Ct. 164, 78 L.Ed.2d 150 (1983). More specifically, in *Bonham v. Dresser Indus., Inc.*, the Court of Appeals held that failure to post the required notice will toll the running of the 180-day period, at least until such time as the aggrieved person *seeks out an attorney* or *acquires actual knowledge of his rights under the ADEA.* 569 F.2d at 193 (emphasis added).

■ Plaintiff testified at his deposition, and counsel for Defendant stipulated at oral argument, for purposes of this motion, that there was no poster in Plaintiff's place of employment before May 31, 1981. *See* Plaintiff's Deposition, at 56–58; Tr. at —. Defendant argues, however, that Plaintiff, as early as March, 1981, consulted with an attorney about a possible age discrimination claim, and was arguably knowledgeable enough to know that he had a potential cause of action. We disagree, under the facts of this case.

Plaintiff inquired of the Borough Solicitor as to the legality of the ordinance. The solicitor affirmatively stated to Plaintiff that the town ordinance was dispositive on the subject. *See* Plaintiff's Deposition, at 39. Plaintiff then made inquiries of the solicitor for the Western Pennsylvania Police Chiefs and the solicitor of the State of Pennsylvania Police Chiefs as to the legality of his forced retirement. The solicitor of the Western Pennsylvania Chiefs, one Mr. Segal, informed Plaintiff that he had no information other than the fact that the ordinance was binding under Pennsylvania

law. *Id.* at 39–40. Segal also told Plaintiff that, in his opinion, Plaintiff had no case under Pennsylvania law. *Id.* at 34. The solicitor of the Pennsylvania Chiefs, talking with Plaintiff at a convention, was unable to provide Plaintiff with any information. *Id.* at 33. After Plaintiff resigned his position as Treasurer of the Allegheny County Police Chiefs, he continued to submit queries to the State Chiefs' solicitor by way of friends travelling to meetings or conventions. *Id.* at 34–35. Plaintiff testified that, in March or April of 1981, 7–8 months after he first approached the solicitor for the Western Pennsylvania Chiefs, the solicitor for the State Chiefs wrote to him directing him to the Wage and Hour Commission at the Federal Building. *Id.* at 33–35. Plaintiff went to the Wage and Hour Commission within three weeks of receiving the information. *Id.* at 56. Employees of the Wage and Hour Commission directed Plaintiff to the EEOC. *Id.* at 35. Plaintiff testified that he did not go to the EEOC any sooner because he had no knowledge of any rights except those under state law. *Id.* at 70.

We believe the circumstances of this case justify equitable tolling of the 180-day period. First, no notice informing employees of their rights under the ADEA was posted. Second, we do not view Plaintiff's contacts with the solicitors of the Western Pennsylvania or State of Pennsylvania to amount to the kind of consultation with an attorney contemplated by *Bonham.* Plaintiff never retained either solicitor as his attorney. His questions to them about mandatory retirement ordinances may or may not have elicited the attention a retained lawyer would give to his client's problems. In sum, we do not find that these contacts were evidence of an attorney-client relationship. *See Jacobson v. Pitman-Moore, Inc.,* 582 F.Supp. 169, 174 (D.Minn.1984). Once Plaintiff was directed to the Wage and Hour Commission, he acted promptly.

Finally, we find the town solicitor's statement to Plaintiff that the town ordinance was controlling to be an additional factor. A misrepresentation, if proven, will equitably toll the statute of limitations even if not made negligently or fraudulently. *See Kamens v. Summit Stainless, Inc.,* 586 F.Supp. 324, 328 (E.D.Pa.1984) (citing *Ott v. Midland Ross Corp.,* 600 F.2d 24, 31–32 (6th Cir.1979); Restatement of Torts (Second), § 552(c) (1977)).

We find Defendant's reliance on *Kazanzas v. Walt Disney World,* 704 F.2d 1527 (11th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 425, 78 L.Ed.2d 360 (1983) misplaced. *Kazanzas* held that where an employer simply failed to post the required notice, equitable modification of the 180-day period did not mandate tolling of the two-year statute of limitations. *Id.* at 1530. At trial, the jury had returned a special verdict stating that Disney did not willfully discriminate. Thus, the two-year statute of limitations applied. *Id.* at 1529. In the present case, it remains to be decided whether the two or three-year statute of limitations applies. No question has yet been raised as to the tolling of the two-year period because Plaintiff has alleged a willful violation. If, at trial, a violation is found and the violation is found not willful, it may well be that the two-year statute of limitations would act as a bar to recovery. *See, e.g. Herman v. NBC,* 744 F.2d 604, 606 (7th Cir.1984) (two-year statute of limitations bar to nonwillful claims); *EEOC v. Home Ins. Co.,* 553 F.Supp. 704, 713–14 (S.D.N.Y.1982) (finding after trial that defendant's violation willful and not barred by statute of limitations); *Kimball v. Goodyear Tire & Rubber Co.,* 504 F.Supp. 544, 549 (E.D.Tex.1980) (FLSA; three-year statute of limitations held at trial on finding of willfulness).

### D. *BFOQ*

Defendant argues that, notwithstanding any other arguments, it is entitled to summary judgment based on the Bona Fide Occupational Qualification defense ("BFOQ") provided for by 29 U.S.C. § 623(f). Whether or not Defendant ultimately prevails under this theory, we find this question one to be resolved after a full trial. The courts are not in agreement as

to whether mandatory retirement for law enforcement officers is justifiable as a BFOQ in all cases. *Compare Mahoney v. Trabucco*, 738 F.2d 35 (1st Cir.), cert. denied, —— U.S. ——, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984), and *Johnson v. Mayor and City of Baltimore*, 731 F.2d 209 (4th Cir.1984) (BFOQ defense upheld) with *Heiar v. Crawford County, Wisconsin*, 746 F.2d 1190 (7th Cir.1984) (BFOQ defense not made out). We note that the Supreme Court has granted certiorari to decide whether a city's mandatory retirement policy for firefighters who had reached 55 is a valid BFOQ in light of the mandatory federal retirement for federal firefighters who reach 55. *See Johnson v. Mayor and City of Baltimore*, 731 F.2d 209 (4th Cir.1984); *EEOC v. Mayor and City of Baltimore*, 731 F.2d 209 (4th Cir.1984), *cert. granted*, —— U.S. ——, 105 S.Ct. 901, 83 L.Ed.2d 917 (1985). We will, therefore, deny Defendant's motion for summary judgment as to its BFOQ defense.